1
2
3
4
5
6
7
8
9
10

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ALEXANDRIA NICHOLAS, individually and on behalf of similarly situated individuals,<br><br>        Plaintiff,<br><br>   v.<br><br>AMAZON.COM, INC., a Delaware Corporation,<br><br>        Defendant. | NO. 2:22-cv-01616-TL<br><br>FIRST AMENDED COMPLAINT – CLASS ACTION<br>DEMAND FOR JURY TRIAL |

11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

**BORDE LAW PLLC**
600 Stewart Street, Suite 400
Seattle, Washington 98101
(206) 531-2722

Plaintiff Alexandria Nicholas, both individually and on behalf of similarly situated individuals, brings this First Amended Class Action Complaint against Defendant Amazon.com, Inc. (hereinafter "Amazon" or "Defendant") for its deceptive, unfair, and ultimately unlawfully administered user interface connected to its "Subscribe & Save" program (hereinafter, "S&S" or "S&S Program" or "Program").Through the Program, Defendant utilizes dark patterns – user interface design choices intended to confuse, deceive, and frustrate users who attempt to cancel their subscriptions or who do not intend to initiate a subscription to begin with. Such dark patterns allow Defendant to wrongly continue to send users products they attempt to cancel, to charge them for such products, and to continue to collect, retain, and use the personal data of these "subscribers." Plaintiff alleges as follows based on personal knowledge as to her own acts and experiences, and as to all other matters, upon information and belief, including an investigation conducted by her attorneys:

## I.  NATURE OF THE CASE

1.  This case is a putative class action brought to obtain redress for consumers who have been harmed by Defendant's use of unfair and deceptive business practices in implementing its "Subscribe & Save" program.

2.  Through its Subscribe & Save automatic subscription renewal program, Defendant employs deceptive and unfair software design to induce consumers to enter into subscriptions for recurring, automatic purchases of household goods and other consumer items which Amazon knows, and intentionally designs to be difficult to cancel. By using discounted prices to entice and induce its customers to set up automatically renewing subscriptions in place of one-time purchases, Defendant is able to multiply the revenue of each transaction by however

FIRST AMENDED COMPLAINT – CLASS ACTION
DEMAND FOR JURY TRIAL - 1

BORDE LAW PLLC
600 Stewart Street, Suite 400
Seattle, Washington 98101
(206) 531-2722

1    many subscriptions go unnoticed, or until the subscriber is finally able to complete the many

2    difficult steps required to cancel their subscription through the Program.

3         3.      Although the Subscribe & Save program is advertised as a way for customers to

4    simplify their online shopping experience and save money, Defendant has intentionally designed

5    its S&S Program using deceptive "dark pattern" elements to ensure that customers overspend on

6    items they do not need, overpay for items they do need, and, when they ultimately decide to

7    cancel their automatic purchase subscriptions – that they give up before completing the

8    cancellation process because such process is unreasonably difficult to complete, thereby

9    allowing Amazon to realize additional revenue and profit for the ongoing and continuing

10   automatic purchases. Defendant uses dark patterns at almost every step of the purchase process

11   to impose unnecessary, unfair, and deceptive procedural burdens on users who wish to cancel

12   their subscriptions, or who did not intend to subscribe in the first place.

13        4.      Defendant also deceives consumers in its representations about Subscribe & Save

14   items. For example, Defendant sets the default of S&S products to automatically renew as

15   frequent as every two weeks for items that Amazon knows need replacement much less often,

16   like certain over the counter medications or other consumable items. In presenting such

17   unreasonably short default S&S renewal timeframes Amazon makes knowingly untrue

18   representations that such items are "most commonly" bought with such frequency. In other cases,

19   Defendant represents household appliances and similar such items that are not expendable or

20   consumable as being most commonly bought on a frequent and regular basis, even when it is

21   highly unlikely that anyone would purchase them with such frequency.

FIRST AMENDED COMPLAINT – CLASS ACTION
DEMAND FOR JURY TRIAL - 2

5.      Through these deceptive practices, Defendant has knowingly harmed its customers and has retained significant financial benefits from its deceptive and unfair conduct. Defendant could easily prevent this harm by making straightforward and sensible adjustments to its user interface – as it has in countries which have criticized its use of dark patterns – but to date, Defendant has willfully continued its unfair and deceptive practices to its own benefit and to the detriment of consumers.

## II.      PARTIES

6.      Defendant Amazon.com, Inc. is the world's largest e-commerce retailer. Defendant markets and sells consumer goods through its Amazon.com website and mobile application.

7.      At all relevant times, Plaintiff has been a resident of Illinois, specifically Cook County.

## III.      JURISDICTION AND VENUE

8.      This Court may assert personal jurisdiction over Defendant pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d) because at least one Class member is of diverse citizenship from Amazon, there are more than 100 Class members nationwide, and the aggregated amount in controversy exceeds $5,000,000, exclusive of interest and costs.

9.      Venue is proper under 28 U.S.C. § 1391(b)(1) and (2), because Amazon's principal place of business is in this judicial district, and a substantial part of the events giving rise to the claims occurred in this judicial district.

FIRST AMENDED COMPLAINT – CLASS ACTION
DEMAND FOR JURY TRIAL - 3

**BORDE LAW PLLC**
600 Stewart Street, Suite 400
Seattle, Washington 98101
(206) 531-2722

1

## IV.    FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

2

### A.    Dark Patterns Generally

3

10.    Dark patterns are online user interfaces that are intended to confuse users,

4

increase the difficulty for users to express their actual preferences, and manipulate users into

5

taking certain actions against their own interests.[1] Dark patterns work by exploiting cognitive

6

biases, and "often employ strategies that render the ease of selecting different options

7

asymmetric, cover up the mechanisms by which consumers are influenced, deceive users through

8

acts or omissions, hide relevant information, or restrict choices likely to be popular among

9

consumers."[2] The term "dark patterns" was coined to convey the unscrupulous nature of such

10

design elements, "and also the fact that [they] can be shadowy and hard to pin down."[3]

11

11.    Research has shown that the most effective dark pattern elements include hidden

12

information,[4] obstruction,[5] trick questions, social proof,[6] loaded questions, and default

13

14

15

16

---

[1] Jamie Luguri, Lior Jacob Strahilevitz, Shining a Light on Dark Patterns, 13 J. Legal Analysis, Issue 1, 2021, Pages 43–109, https://doi.org/10.1093/jla/laaa006.

17

[2] Jamie Luguri, Lior Jacob Strahilevitz, Shining a Light on Dark Patterns, 13 J. Legal Analysis, Vol. 13, Issue 1, 2021, 43–109, https://doi.org/10.1093/jla/laaa006 (citing Mathur, Arunesh, Jonathan Mayer, and Mihir Kshirsagar. What Makes a Dark Pattern.. Dark? Design Attributes, Normative Considerations, and Measurement Methods, ACM Conference on Human Factors in Computing Systems. 2021 (available at https://arxiv.org/pdf/2101.04843.pdf)).

18

19

20

[3] Harry Brignull, Bringing Dark Patterns to Light, MEDIUM (June 6, 2021), https://harrybr.medium.com/bringing-dark-patterns-to-light-d86f24224ebf

21

[4] A dark pattern in which important information is hidden or de-emphasized by placing it in a less visually prominent location.

22

23

[5] Making users jump through unnecessary hoops to reject or cancel a service.

24

[6] Exploiting the "bandwagon effect" in which users are pressured to make a decision based on information about other users' decisions.

25

FIRST AMENDED COMPLAINT – CLASS ACTION
DEMAND FOR JURY TRIAL - 4

**BORDE LAW PLLC**
600 Stewart Street, Suite 400
Seattle, Washington 98101
(206) 531-2722

acceptance. In practice, dark patterns serve a very specific purpose: to achieve a financial goal for those who implement them by manipulating users into making decisions against their own interests.

12.     For example, the bandwagon effect can cause consumers to purchase too much of a product based on representations that other consumers are purchasing similar quantities. Other dark patterns exploit cognitive biases like the endowment effect[7] and status quo bias to keep consumers subscribed to products they no longer want or need. Similarly, by using confusing language such as double negatives, the "trick questions" dark pattern imposes a cognitive burden on a user looking to perform an "undesirable" action like cancelling a subscription or withholding consent for data collection. For instance, a user attempting to cancel a subscription might be forced to select between buttons that continue or cancel the cancellation process itself, with the "continue" button cancelling the subscription and the "cancel" button continuing the subscription.

13.     Asymmetric dark patterns nudge users toward making a particular decision by imposing unequal burdens on the user. User interface options that benefit the service, for example Amazon's "Subscribe & Save" button, are featured prominently while options that benefit the user are hidden behind several clicks or are obscured from view by varying the style and position of the option.[8]

---

[7] The tendency for people to assign a higher value to objects they own than to identical objects they do not own.
[8] Mathur, Arunesh, Jonathan Mayer, and Mihir Kshirsagar. <u>What Makes a Dark Pattern.. Dark? Design Attributes, Normative Considerations, and Measurement Methods</u>, ACM Conference on Human Factors in Computing Systems. 2021, at 7 (available at https://arxiv.org/pdf/2101.04843.pdf) (last visited Aug. 4, 2022).

FIRST AMENDED COMPLAINT – CLASS ACTION
DEMAND FOR JURY TRIAL - 5

**BORDE LAW PLLC**
600 Stewart Street, Suite 400
Seattle, Washington 98101
(206) 531-2722

14.     Covert dark patterns also inhibit the user's ability to provide valid consent to the terms of an agreement. Covert dark patterns work by nudging a user toward making certain decisions or selecting for certain outcomes while hiding the fact that such nudging is taking place from the user. For example, a retailer might use attention grabbing font and coloring to make it seem as though its most profitable option is the only option available to the consumer, even though it knows other options will better suit the user's needs.[9]

15.     The "roach motel" dark pattern offers another salient example in which cancelling a subscription or membership is significantly tougher than initiating such a transaction. For example, a subscription that can be set up in only a few steps, or through a few clicks, might require a user who wishes to cancel to provide notice of cancellation long before when it is actually necessary, and to navigate menus and processes intended to make the user give up before completing the cancellation.

16.     Indeed, Amazon's own research and internal documents reveal that Amazon has intentionally implemented dark patterns to keep its customers locked into subscriptions for digital services.[10] As a result of increasing the difficulty associated with cancelling, Amazon was able to lower cancellations of its "Amazon Prime" subscription by 14% at one point in 2017.[11]

---

[9] *Id.* at 8.

[10] Hannah Towey & Eugene Kim, *Amazon Used a Sneaky Tactic to Make it Harder to Quit Prime and Cancellations dropped 14%, According to Leaked Data*, BUSINESS INSIDER (Mar. 16, 2022), https://www.businessinsider.com/amazon-project-iliad-made-cancel-prime-membership-harer-leaked-data-2022-3.

[11] *Id.*

FIRST AMENDED COMPLAINT – CLASS ACTION
DEMAND FOR JURY TRIAL - 6

**BORDE LAW PLLC**
600 Stewart Street, Suite 400
Seattle, Washington 98101
(206) 531-2722

On information and belief, Amazon has extended these practices to its Subscribe & Save program.

**B.     Dark Patterns within Defendant's Subscribe & Save Program**

17.     Defendant advertises its Subscribe & Save program as a way for shoppers to "[s]ave up to 15% with automatic deliveries" of items that they otherwise most likely would have bought as needed. Defendant highlights the ease and convenience with which users can set up a subscription to receive automatic deliveries of consumer goods like household cleaning supplies, food items, over the counter medicines and more.[12]

18.     Defendant represents that Subscribe & Save is easy to use and that shoppers can save money using the program in only three simple steps: "Shop items," "Create your subscription," and "Subscribe more. Save more."[13]

19.     Defendant further encourages users to sign up for its Subscribe & Save program by highlighting the fact that users can "cancel anytime" and by prominently featuring the subscribe and save purchase option in a manner that showcases the subscription option, while downplaying the one-time purchase option. Defendant strategically omits the fact that even though a Subscribe & Save item can be shipped as quickly as the next day, a user who wishes to skip or cancel a delivery must provide at least eight days' notice to do so.

20.     For many products, Defendant even sets Subscribe & Save as the default purchase method. Any user who wishes to instead make a one-time purchase must first notice that they

---

[12] *Amazon.com: Subscribe & Save | Save on Everyday Essentials*,
https://www.amazon.com/gp/browse.html?node=5856181011 (last visited Aug. 12, 2022).

[13] *Id.*

FIRST AMENDED COMPLAINT – CLASS ACTION
DEMAND FOR JURY TRIAL - 7

**BORDE LAW PLLC**
600 Stewart Street, Suite 400
Seattle, Washington 98101
(206) 531-2722

will be opted-in to a recurring subscription by default, then must switch to the one-time purchase option before completing the transaction.

21.     Amazon's Subscribe & Save program offers such a clear example of the use of dark patterns that it has been named to the "Deceptive Design Hall of Shame" by Dr. Harry Brignull, a cognitive scientist whose research focuses on deceptive user interfaces.[14]

22.     According to a case study available on deceptive.design, a website curated by Dr. Brignull, Amazon's Subscribe & Save program employs dark pattern design elements in at least five separate places on each Subscribe & Save product's Amazon mobile page.[15]

23.     Using a listing of a dietary supplement as an example, Dr. Brignull first shows that "Subscribe & Save" is the default choice when a user navigates to the mobile ordering page for a Subscribe & Save eligible product. Dr. Brignull identifies the "default" dark pattern as "a user interface that has been **crafted to trick users** into doing things, such as […] or **signing up for recurring bills**." Dr. Brignull points out that the alternative design choice is to "aim to build a positive relationship between you and your users. If you want to change behaviors, **do it with [users'] consent."**[16]

24.     Defendant's deceptive design also exploits the endowment effect, a cognitive bias in which users who can be made to feel like they already own a product tend assign a higher value to it. Through Defendant's promotion of fast shipping – but only for purchases made before

---

[14] *The Psychology Behind Amazon's Purchase Experience*, DECEPTIVE DESIGN, https://growth.design/case-studies/amazon-purchase-ux (last visited Aug. 12, 2022).

[15] *Id.*

[16] *Id.*

FIRST AMENDED COMPLAINT – CLASS ACTION
DEMAND FOR JURY TRIAL - 8

**BORDE LAW PLLC**
600 Stewart Street, Suite 400
Seattle, Washington 98101
(206) 531-2722

the expiration of a countdown – users are reminded that the product can be theirs in mere hours if they act now.

25.     Defendant's order page also illustrates Fitts's Law, which states that the time to acquire a target – in this case the "Subscribe now" button – is a function of the distance to and size of the target. Amazon exploits Fitts's law by dedicating almost a third of the screen to the subscription option while providing a small and visually-obscured button for the one-time purchase option. The effect, according to Dr. Brignull, is that "[m]ost people will likely start setting up their subscription as a result."[17]

26.     Defendant's user interface incorporates the "social proof" deceptive design element by presenting shoppers with the "most common" renewal frequency supposedly selected by other customers. If the user fails to notice that he or she is signing up for a subscription, or fails to adjust the "most common" renewal interval, the Subscribe & Save program sets the renewal frequency to that interval by default, even when such a delivery frequency creates absurd results like sending a customer the same new kitchen appliance each month.

27.     Worse yet, Defendant's presentation of a "most common" renewal frequency is misleading at best and fraudulent at worst. For some nutritional supplements and similar items, the most common renewal frequency is not only highly improbable but would likely harm anyone who uses the product with such frequency.

28.     For example, Defendant's listing for iOSAT brand Potassium Iodide tablets, a dietary supplement labeled for "thyroid blocking in a radiation emergency only" shows a "most

---

[17] *The Psychology Behind Amazon's Purchase Experience*, DECEPTIVE DESIGN, https://growth.design/psychology#fitts-law (last visited Aug. 12, 2022).

FIRST AMENDED COMPLAINT – CLASS ACTION
DEMAND FOR JURY TRIAL - 9

BORDE LAW PLLC
600 Stewart Street, Suite 400
Seattle, Washington 98101
(206) 531-2722

common" Subscribe & Save delivery frequency of every two months. Even though the CDC recommends that potassium iodide be taken only at the instruction of healthcare or emergency response officials in the event of a radiation emergency like the detonation of a dirty bomb, conventional nuclear attack, or the release of radioactivity from a nuclear energy facility, and the Nuclear Regulatory Commission advises that potassium iodide tablets are inherently shelf stable and do not lose their effectiveness over time, Defendant still represents that its subscribers most commonly purchase it every other month.[18]

 

29.     In another example of an improbable "most common" delivery schedule, Defendant markets the $110 Waterdrop BS08 under-sink water filter system with a filter life of 8,000 gallons or 12-24 months.[19] However, Defendant represents to its customers that once a month is the most common renewal frequency for this item. Given that the average household

---

[18] *Facts About Potassium Iodide (KI) | CDC*, https://www.cdc.gov/nceh/radiation/emergencies/ki.htm (last visited Aug. 19, 2022); Frequently *Asked Questions About Potassium Iodide | NRC.gov*, https://www.nrc.gov/about-nrc/emerg-preparedness/about-emerg-preparedness/potassium-iodide/ki-faq.html#shelflife (last visited Aug. 19, 2022).

[19] *Amazon.com: Waterdrop BS08 Under Sink Water Filter*, https://a.co/d/duOclyx (last visited Aug. 4, 2022).

FIRST AMENDED COMPLAINT – CLASS ACTION
DEMAND FOR JURY TRIAL - 10

**BORDE LAW PLLC**
600 Stewart Street, Suite 400
Seattle, Washington 98101
(206) 531-2722

uses around 1,735 gallons of water from faucets per month, it is exceedingly unlikely that subscribers most commonly make monthly purchases of a system that outputs more than four times that amount.[20]



30.     The water filter example illustrates another of the deceptive aspects of Defendant's Subscribe & Save program. Although the BS08 filter system is a permanent appliance, the Subscribe & Save option suggests that the *entire system* is most commonly replaced monthly and defaults to that option. In reality only the filter cartridge itself needs to be replaced regularly, though not anywhere near monthly. Surprisingly, this $20 replacement filter cartridge is not currently available via Defendant's Subscribe & Save program.[21]

---

[20] *How We Use Water | US EPA*, https://www.epa.gov/watersense/how-we-use-water#:~:text=The%20average%20American%20family%20uses,water%20per%20day%20at%20home (last visited Aug. 12, 2022) (figure calculated by multiplying the average household's use of 300 gallons per day by the 19% of water use attributed to faucets.).

[21] Amazon.com: Waterdrop WF08 Under Sink Replacement Water Filter, https://a.co/d/09MWVzQ (last visited Aug. 12, 2022).

FIRST AMENDED COMPLAINT – CLASS ACTION
DEMAND FOR JURY TRIAL - 11

**BORDE LAW PLLC**
600 Stewart Street, Suite 400
Seattle, Washington 98101
(206) 531-2722

31.     Similarly deceptive is the fact that in the water filter example shown above and for many other Subscribe & Save products, consumers do not actually "save" through enrolling in Defendant's S&S Program. Instead, they will pay $109.99, the same price as they would pay to make a one-time purchase. No discount would apply until the customer purchases four other products for delivery on the same day.

32.     Rather than allowing for easy cancellation of Subscribe & Save orders, Amazon's user interface was designed to nudge users who are seeking to cancel their subscriptions to "skip a delivery" instead, thereby allowing likely unwanted deliveries to resume after a brief pause. Users persistent enough to proceed beyond the "skip a delivery" screen are still at only the beginning of the journey required to cancel a subscription.

33.     In a nearly textbook illustration of the "roach motel" dark pattern, Defendant subjects users who wish to cancel a subscription through its popular mobile app to a tedious and confusing nine-step process that includes dozens of abstruse menu options, icons, and even a multiple-choice question. That this complexity is intentional is obvious because the same mobile app requires only a frictionless two-step process to initiate a Subscribe & Save subscription, and allows users to purchase items generally with "one click." Defendant purposely avoids building such convenience into the S&S cancellation process, as shown below in an example of the process on a device running the iOS version of the Amazon.com mobile app.

FIRST AMENDED COMPLAINT – CLASS ACTION
DEMAND FOR JURY TRIAL - 12

**BORDE LAW PLLC**
600 Stewart Street, Suite 400
Seattle, Washington 98101
(206) 531-2722



FIRST AMENDED COMPLAINT – CLASS ACTION
DEMAND FOR JURY TRIAL - 13

34.     This tedious and confusing cancellation flow illustrates what Plaintiff and the other members of the Class have experienced, and its complexity is no accident. Each step of the lengthy process is designed to frustrate users into abandoning their goal of cancelling before they can achieve it, thereby allowing Defendant to "sell" them another product through Plaintiff's and similarly situated individuals "subscriptions." Defendant has not implemented a simple, two-step cancellation process because customers would find it *too easy* to use and the expected cancellations through an easy cancellation process would result in measurably reduced revenues and profits for Amazon. For Amazon, the friction associated with cancelling a Subscribe & Save subscription is a feature, not a bug.

35.     Furthermore, the overly difficult and time-consuming process of cancelling a Subscribe & Save subscription is completely unnecessary. For example, Amazon recently agreed to allow its European users to cancel their Amazon Prime subscriptions through a cancellation flow that more closely resembles the purchase flow that initiated the order.[22] Rather than having to navigate the labyrinth of menus and icons that Amazon subjects its American users to, those in Europe are able to cancel their subscriptions in just two steps using a prominent and clear "cancel" button.[23]

36.     Plaintiff has experienced the frustration and other costs associated with trying and failing to cancel a Subscribe & Save order firsthand.

---

[22] *Consumer Protection: Amazon Prime Changes its Cancellation Practices to Comply with EU Consumer Rules*, https://ec.europa.eu/commission/presscorner/detail/en/ip_22_4186 (last visited Aug. 12, 2022).

[23] *Amazon to Ease Cancellation Process After EU Probe*, https://www.law360.com/articles/1508017/amazon-to-ease-cancellation-process-after-eu-probe (last visited Aug. 12, 2022).

FIRST AMENDED COMPLAINT – CLASS ACTION
DEMAND FOR JURY TRIAL - 14

**BORDE LAW PLLC**
600 Stewart Street, Suite 400
Seattle, Washington 98101
(206) 531-2722

37.     On January 24, 2022, Plaintiff initiated a Subscribe & Save subscription for Inception Dry dog food.

38.     Upon realizing that she did not intend to receive this brand of dog food on a subscription basis, Plaintiff attempted to cancel her subscription through Amazon's mobile website by navigating the cancellation process's numerous and unnecessary menus and icons. Through such attempts, Plaintiff believed she had cancelled her S&S subscription.

39.     Despite her best efforts to cancel, and despite being led to believe by Defendant's mobile website that she had indeed cancelled her subscription, on March 2, 2022 Plaintiff again received a delivery of the Inception brand dog food. Through additional effort, Plaintiff was later able to cancel her subscription and stop receiving deliveries of the Inception Dry dog food.

40.     Roughly three months later, on June 17, 2022 Plaintiff initiated another Subscribe & Save subscription, this time for Wellness Core brand dog food. After her first delivery of Wellness Core on July 18, 2022, Plaintiff again attempted to cancel her subscription through Amazon's mobile website. Yet again, Plaintiff received an undesired shipment of the Wellness Core brand dog food on August 1, 2022 despite being under the impression that she had successfully canceled via Amazon's mobile website.

41.     Defendant's representations on its Subscribe & Save webpage that the program can be "cancel[ed] anytime" were material to Plaintiff's decision to enroll in the program. Plaintiff would not have subscribed to the Subscribe & Save program had she known that the cancellation process was disproportionately harder than that of initiating a subscription, and that she would not be able to promptly cancel her subscriptions as a result of Defendant's objectively difficult and confusing cancellation procedure.

FIRST AMENDED COMPLAINT – CLASS ACTION
DEMAND FOR JURY TRIAL - 15

**BORDE LAW PLLC**
600 Stewart Street, Suite 400
Seattle, Washington 98101
(206) 531-2722

42.     As a result, Plaintiff has experienced financial harm from her unwanted subscription renewals, in addition to the time wasted attempting to cancel her subscriptions.

## V.     CLASS ACTION ALLEGATIONS

43.     Plaintiff brings this action both individually on her own behalf and, pursuant to 735 ILCS § 5/2-801, as representative on behalf of a Class and Subclass defined as follows:

> **The Class:** All individuals who, during the applicable limitations period, attempted to cancel a Subscribe & Save subscription online by clicking at least two pages in the cancellation process, and who were subsequently charged for one or more purchases in connection with Defendant's Subscribe & Save program.

> **The Illinois Subclass:** All members of the Class whose Subscribe & Save purchase(s) were made within the state of Illinois.

44.     Excluded from the Class and Subclass are any members of the judiciary assigned to preside over this matter; any officer or director of Defendant; and any immediate family member of such officer or director.

45.     There are at least thousands of members of the Class and Subclass, making the members of the Class and Subclass so numerous that joinder of all members is impracticable. Although the exact number of members of the Class and Subclass is currently unknown to Plaintiff, the members can be easily identified through Defendant's records.

46.     Plaintiff's claims are typical of the claims of the Class and Subclass she seeks to represent, because the bases of Defendant's liability to Plaintiff and the Class and Subclass is substantially the same, and because Defendant's conduct has resulted in similar injuries to Plaintiff and to the other members of the Class and Subclass.

47.     There are many questions of law and fact common to the claims of Plaintiff and the Class and Subclass, and those questions predominate over any questions that may affect

FIRST AMENDED COMPLAINT – CLASS ACTION
DEMAND FOR JURY TRIAL - 16

**BORDE LAW PLLC**
600 Stewart Street, Suite 400
Seattle, Washington 98101
(206) 531-2722

individual members of the Class and Subclass. Common questions for the Class and Subclass include, but are not limited to, the following:

    a.    Whether Defendant's conduct violates the Washington Consumer Protection Act. Wash. Rev. Code §§ 19.86.010, *et seq.*;

    b.    Whether Defendant's Subscribe & Save subscriptions constitute automatic contract renewals or continuous service offers under the Illinois Automatic Contract Renewal Act. 815 ILCS 601/1 *et seq.*;

    c.    Whether Defendant failed to disclose the automatic renewal clause clearly and conspicuously in its Subscribe & Save contracts in violation of 815 ILCS 601/10 (a);

    d.    Whether Defendant failed to provide a cost-effective, timely, and easy-to-use mechanism for cancellation of its Subscribe & Save contracts in violation of 815 ILCS 601/10 (b-5);

    e.    Whether Defendant's conduct in violation of the Illinois Automatic Contract Renewal Act constitutes a violation of the Illinois Consumer Fraud and Deceptive Business Practices Act;

    f.    Whether Defendant's conduct otherwise constitutes a violation of the Illinois Consumer Fraud and Deceptive Business Practices Act;

    g.    Whether Defendant made representations or omissions to the Class and Subclass regarding the difficulty of cancelling Subscribe & Save subscriptions, the frequency with which Subscribe & Save purchases are made, and other material facts related to Subscribe & Save transactions;

FIRST AMENDED COMPLAINT – CLASS ACTION
DEMAND FOR JURY TRIAL - 17

**BORDE LAW PLLC**
600 Stewart Street, Suite 400
Seattle, Washington 98101
(206) 531-2722

h.      Whether Defendant knew that such representations were false;

i.      Whether the members of the Class and Subclass relied on such representations and omissions in making their purchasing decisions;

j.      Whether Defendant has been unjustly enriched by the revenues it has retained in connection with its unlawful conduct imposed on members of the Class and Subclass;

k.      Whether Defendant has a duty to accurately communicate information to consumers;

l.      Whether Defendant has breached its duty to consumers by misrepresenting how often its customers most commonly purchase items from Defendant;

m.      Whether Plaintiff and the Class and Subclass have incurred costs and otherwise suffered harm as a result of Defendant's misrepresentations; and

n.      Whether Plaintiff and the other members of the Class and Subclass are entitled to monetary damages and/or injunctive relief or other remedies, and, if so, the nature of such remedies.

48.     Absent a class action, most members of the Class and Subclass would find the cost of litigating their claims to be prohibitively expensive and would thus have no effective remedy. The class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation in that it conserves the resources of the courts and the litigants and promotes consistency and efficiency of adjudication.

FIRST AMENDED COMPLAINT – CLASS ACTION DEMAND FOR JURY TRIAL - 18

**BORDE LAW PLLC**
600 Stewart Street, Suite 400
Seattle, Washington 98101
(206) 531-2722

49.     Plaintiff will fairly and adequately represent and protect the interests of the other members of the Class and Subclass she seeks to represent. Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions. Plaintiff and her counsel are committed to vigorously prosecuting this action on behalf of the other members of the Class and Subclass and have the financial resources to do so. Neither Plaintiff nor her counsel has any interest adverse to those of the other members of the Class and Subclass.

50.     Defendant has acted and failed to act on grounds generally applicable to the Plaintiff and the other members of the Class and Subclass, requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class and Subclass and making injunctive or corresponding declaratory relief appropriate for the Class and Subclass as a whole.

### COUNT I
**Violations of the Washington Consumer Protection Act**
**(Wash Rev. Code §§ 19.86.010, *et seq*)**

51.     Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

52.     The Washington Consumer Protection Act ("WCPA") broadly prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Wash. Rev. Code § 19.86.010.

53.     Amazon committed the acts complained of herein in the course of "trade" or "commerce" within the meaning of Wash. Rev. Code § 19.86.010.

54.     Amazon engaged in unfair or deceptive acts or practices through its conduct described herein by using dark patterns to confuse or frustrate Plaintiff and members of the Class

FIRST AMENDED COMPLAINT – CLASS ACTION
DEMAND FOR JURY TRIAL - 19

**BORDE LAW PLLC**
600 Stewart Street, Suite 400
Seattle, Washington 98101
(206) 531-2722

in order to subvert their intentions to cancel their Subscribe & Save subscriptions. Amazon's Subscribe & Save cancellation flow requires users to navigate an unnecessarily complicated and cumbersome user interface that incorporates dark pattern design elements such as "roach motel" menus and "social proof" misrepresentations about most common renewal frequencies. These tactics are deceptive because they tend to mislead users who wish to cancel their Subscribe & Save orders, or who wish to receive their items on an as-needed basis.

55.     A user attempting to cancel a Subscribe & Save subscription through Amazon's mobile app or web interface cannot reasonably avoid Amazon's use of dark patterns and other misleading design interfaces. Amazon's acts and practices had the capacity to deceive a substantial portion of the public and did in fact deceive reasonable consumers, including Plaintiff, by confusing or manipulating them, directing them away from the cancellation process, or frustrating their intention to quit their subscriptions.

56.     Amazon intentionally and knowingly misled Plaintiff and Class members. Amazon has designed and implemented user interfaces precisely to deceive members of the public. Amazon's own "Project Iliad" reveals that it has used deceptive interfaces to prevent cancellations of its other subscription products, including Amazon Prime.

57.     Amazon's use of dark patterns throughout its Subscribe & Save program are unfair and deceptive. Specifically, Amazon's representations that customers can "cancel anytime" misrepresent the difficulty of the cancellation process. An ordinary consumer would

FIRST AMENDED COMPLAINT – CLASS ACTION
DEMAND FOR JURY TRIAL - 20

**BORDE LAW PLLC**
600 Stewart Street, Suite 400
Seattle, Washington 98101
(206) 531-2722

not expect cancellation of a subscription to be inordinately harder than its initiation, especially given Amazon's representations that such subscriptions can be "cancel[ed] anytime."

58.     Plaintiff and the other members of the Class have suffered an injury in fact, including the payment of subscription fees.

59.     Amazon employed dark patterns to hinder Plaintiff and Class members from ending the Subscribe & Save subscriptions. But for Amazon's unfair and deceptive practices, Plaintiff and the Class members would have cancelled their Subscribe & Save orders and would not have incurred the costs of unwanted deliveries. Amazon's Subscribe & Save dark patterns constitute precisely the type of acts, omissions, and practices the legislature sought to prevent in enacting the Consumer Protection Act.

60.     Amazon's conduct has impacted and continues to impact the public interest. Amazon deceptive and unfair conduct has induced Plaintiff and other members of the Class to sign up for Subscribe & Save subscriptions, Plaintiff and the other members of the Class have suffered damage from the subscriptions they were unable to timely cancel due to Amazon's deception, and Defendant has repeatedly engaged in such deception.

61.     Amazon continues to employ dark patterns in it Subscribe & Save program. Plaintiff seeks to enjoin further unfair and fraudulent acts or practices by Amazon, recover damages, and obtain all other relief allowed under Wash. Rev. Code § 19.86.010.

**COUNT II**
**Violations of the Illinois Automatic Contract Renewal Act**
**(815 ILCS 601/1 *et seq.*)**
**(On behalf of Plaintiff and the Illinois Subclass)**

FIRST AMENDED COMPLAINT – CLASS ACTION
DEMAND FOR JURY TRIAL - 21

**BORDE LAW PLLC**
600 Stewart Street, Suite 400
Seattle, Washington 98101
(206) 531-2722

62.     Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

63.     815 ILCS 601/10 (a) provides that "[a]ny person, firm, partnership, association, or corporation that sells or offers to sell any products or services to a consumer pursuant to a contract, where such contract automatically renews unless the consumer cancels the contract, shall disclose the automatic renewal clause clearly and conspicuously in the contract, including the cancellation procedure."

64.     Defendant is a person, firm, partnership, association, or corporation that sells or offers to sell products or services to consumers, such as Plaintiffs and the Illinois Subclass, pursuant to a contract.

65.     Defendant's Subscribe & Save contracts automatically renew unless the consumers, such as Plaintiff and the Illinois Subclass, cancel the contracts.

66.     Defendant failed to disclose the automatic renewal clause clearly and conspicuously in the contracts, including the cancellation procedure.

67.     The contracts automatically renew continuously unless consumers, such as Plaintiff and the Class, cancel the contract.

68.     Upon information and belief, Defendant has not established and implemented written procedures to comply with the Illinois Automatic Contract Renewal Act and enforce compliance with its procedures.

69.     Upon information and belief, Defendant's failure to comply with the Illinois Automatic Contract Renewal Act was not the result of error.

BORDE LAW PLLC
600 Stewart Street, Suite 400
Seattle, Washington 98101
(206) 531-2722

70.     Defendant did not provide a full refund or credit for all amounts billed to or paid by consumers, such as Plaintiff and the Class, from the date of the renewal until the date of the termination of the account, or the date of the subsequent notice of renewal.

71.     Plaintiff and the members of the Class and Subclass have suffered reasonably foreseeable costs caused by the continuance of their contracts without their valid consent. These costs include, but are not limited to, the direct costs of charges for unwanted products and pecuniary injury in the form of time and expense to mitigate the effects of unauthorized shipments to their homes.

## COUNT III
### Violations of the Illinois Consumer Fraud and Deceptive Business Practices Act
### (815 ILCS 502/1 *et seq.*)
### (On behalf of Plaintiff and the Illinois Subclass)

72.     Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

73.     The Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), prohibits deceptive acts and practices in the sale of goods to consumers.

74.     Plaintiff and other members of the Illinois Subclass engaged in consumer transactions with Defendant in purchasing goods using Defendant's Subscribe & Save program.

75.     Defendant engaged in a deceptive act or practice by misrepresenting material facts to Plaintiff and the members of the Illinois Subclass with intent that they rely upon such misrepresentations. These material facts include, but are not limited to the following:

    a.     That a purchase will take the form of an automatically renewing subscription;

FIRST AMENDED COMPLAINT – CLASS ACTION
DEMAND FOR JURY TRIAL - 23

**BORDE LAW PLLC**
600 Stewart Street, Suite 400
Seattle, Washington 98101
(206) 531-2722

b. The "most common" delivery intervals at which other consumers take delivery of an item delivery of an item;

c. That an automatically renewing subscription is a common and reasonable way to purchase an item; and

d. That a subscription can be cancelled at any time.

76. Plaintiff and other members of the Illinois Subclass reasonably believed that they would not need to expend undue time and effort to cancel their subscriptions, that they could cancel their subscriptions at any time, and that Defendant's representations accurately conveyed the "most common" intervals at which other shoppers purchase Subscribe & Save items were accurate.

77. Instead, Plaintiff and the other members of the Subclass are not able to cancel their subscriptions at any time, Defendant's other customers do not "most common[ly]" subscribe to purchase items at the intervals that Defendant represents, and Defendant's Subscribe & Save subscriptions are unnecessarily difficult to cancel because of Defendant's deliberate efforts to complicate the cancellation process.

78. Defendant's misrepresentations to Plaintiff and the other members of the Subclass that a recurring subscription is the default method of buying an item, that such subscriptions are for a "most common" interval more frequent than is reasonable for such items, and that Subscribe & Save subscriptions can be easily cancelled, constitute a violation of ICFA.

79. Plaintiff and the other members of the Subclass have been harmed to the extent that they have been forced to spend money on items they do not want, to expend time and effort to store or discard unwanted items, or to attempt to return unwanted items to Defendant.

FIRST AMENDED COMPLAINT – CLASS ACTION
DEMAND FOR JURY TRIAL - 24

**BORDE LAW PLLC**
600 Stewart Street, Suite 400
Seattle, Washington 98101
(206) 531-2722

80.     Under ICFA, Plaintiff and other members of the Subclass are entitled to recover their actual or compensatory damages in an amount to be proven at trial, an award of reasonable attorney's fees, injunctive relief prohibiting Defendant's unfair and deceptive conduct prospectively, and any other penalties or awards that may be appropriate under applicable law.

## COUNT IV
### Common Law Fraud
### (On behalf of Plaintiff and the Class and Subclass)

81.     Plaintiff incorporates the above allegations by reference as though fully set forth herein.

82.     Through its affirmative misrepresentations, omissions, suppressions, and concealment of material facts. Defendant defrauded Plaintiff and the Class and Subclass members by leading them to believe that the Subscribe & Save program has material characteristics that it in fact does not: that the program can be cancelled at any time, that the Subscribe & Save delivery option is the default or most common method of purchasing certain items, that other shoppers most commonly purchase Subscribe & Save items at frequent intervals when in fact such intervals are not the "most common," and that Subscribe & Save subscriptions can be cancelled without undue and unreasonable difficulty.

83.     However, these representations were false, as detailed herein. Furthermore, Defendant knew such representations were false because it affirmatively implemented design choices adverse to its own representations about how its subscriptions could be cancelled and other material aspects of the Subscribe & Save subscriptions.

FIRST AMENDED COMPLAINT – CLASS ACTION
DEMAND FOR JURY TRIAL - 25

**BORDE LAW PLLC**
600 Stewart Street, Suite 400
Seattle, Washington 98101
(206) 531-2722

84.     The misrepresentations and omissions made by Defendant were intended to induce, and did induce Plaintiff and the members of the Class to enroll in Defendant's Subscribe & Save subscriptions. Plaintiff and the members of the Class and Subclass reasonably relied upon Defendant's misrepresentations in making their purchasing decisions.

85.     As a direct and proximate result of Defendant's intentional misrepresentations and concealment of facts, and Plaintiff's and the Class's and Subclass's reasonable reliance on Defendant's misrepresentations and concealments, Plaintiff and the other members of the Class and Subclass have been damaged in an amount to be determined at trial.

**COUNT V**
**Unjust Enrichment**
**(On behalf of Plaintiff and the Class and Subclass)**

86.     Plaintiff incorporates by reference the foregoing paragraphs 1–61 and 72–85  as though fully set forth herein.

87.     At the time of entering into their Subscribe & Save transactions, Plaintiff and the other members of the Class did not – and could not – assent to the formation of a valid contract due to Amazon's use of deceptive and materially misleading user interfaces throughout its attempts to bind Plaintiff and the Class to their recurring Subscribe & Save deliveries.

88.     Plaintiff and the other members of the Class and Subclass conferred a benefit on Defendant by paying money to Defendant to purchase Subscribe & Save items.

89.     Defendant unjustly and unlawfully retained a portion of this benefit by accepting and keeping money from Plaintiff and members of the Class and Subclass for their Subscribe & Save purchases without providing them with adequate means to cancel those subscriptions.

**BORDE LAW PLLC**
600 Stewart Street, Suite 400
Seattle, Washington 98101
(206) 531-2722

90.     Defendant has been unjustly enriched by the revenues it has retained from Plaintiff and the Class's and Subclass's Subscribe & Save subscriptions. Defendant appreciates or knows of such benefit.

91.     Defendant's retention of this excess benefit violates fundamental principles of justice, equity, and good conscience because Defendant's failure to disclose material terms of the purchase agreement, in violation of common law, induced Plaintiff and the Class and Subclass to purchase Subscribe & Save subscriptions when they did not intend to, and caused them to be unable to cancel Subscribe & Save subscriptions deliveries once they had commenced. These omissions harmed Plaintiff and the Class and Subclass because they would not have purchased the subscriptions at all, or on the same terms, if the true facts were known.

92.     It would be inequitable and unjust for Defendant to retain the benefit of monies wrongfully charged to customers.

93.     Therefore, to the extent that Defendant has unlawfully retained any money collected or derived from unauthorized Subscribe & Save deliveries, Defendant has been enriched, and it would be unjust to allow Defendant to retain this enrichment.

94.     Because Defendant will be unjustly enriched if it is allowed to retain such funds, Plaintiff and the other members of the Class and Subclass are entitled to an order requiring Defendant to disgorge any benefit it has unjustly retained, and requiring Defendant to pay restitution to Plaintiff and the other members of the Class and Subclass in the amount by which Defendant was unjustly enriched by each transaction.

## PRAYER FOR RELIEF

BORDE LAW PLLC
600 Stewart Street, Suite 400
Seattle, Washington 98101
(206) 531-2722

WHEREFORE, Plaintiff, on behalf of himself and the proposed Class and Subclass, asks this Court to enter an Order:

      a.    Certifying the Class and Subclass as defined above, appointing Plaintiff as Class representative and the undersigned as Class counsel;

      b.    For Defendant to immediately cease the wrongful conduct set forth above;

      c.    Declaring Defendant's conduct violates the statutes referenced herein;

      d.    For restitution of all unauthorized charges and other costs paid by Plaintiff and the Class and Subclass as a result of these wrongs in an amount to be determined at trial;

      e.    For prejudgment interest at the maximum rate permitted by applicable law;

      f.    For costs and disbursements assessed by Plaintiff in connection with this action, including reasonable attorneys' fees under applicable law; and

      g.    Awarding such further and other relief as the Court deems just and equitable.

## JURY DEMAND

Plaintiff requests trial by jury of all claims that can be so tried.

DATED this 5th day of December, 2022

FIRST AMENDED COMPLAINT – CLASS ACTION
DEMAND FOR JURY TRIAL - 28

**BORDE LAW PLLC**
600 Stewart Street, Suite 400
Seattle, Washington 98101
(206) 531-2722

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

BORDE LAW PLLC

By:  s/ Manish Borde
Manish Borde, WSBA #39503
600 Stewart St., 400
Seattle, WA 98101
Telephone: (206) 531-2722
E-mail: mborde@bordelaw.com


MCGUIRE LAW, P.C.

By:  s/ Myles McGuire
Myles McGuire (pro hac vice pending)
David L. Gerbie (admitted pro hac vice)
Joseph Dunklin (admitted pro hac vice)
55 W. Wacker Drive, 9th Fl.
Chicago, IL 60601
Tel: (312) 893-7002
E-mail: mmcguire@mcgpc.com
dgerbie@mcgpc.com
jdunklin@mcgpc.com


LOCKRIDGE GRINDAL NAUEN P.L.L.P.

By:  s/ Robert K. Shelquist
ROBERT K. SHELQUIST (admitted pro hac vice)
REBECCA A. PETERSON (admitted pro hac vice)
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Telephone: (612) 339-6900
Facsimile: (612) 339-0981
E-mail: rkshelquist@locklaw.com
rapeterson@locklaw.com


**ATTORNEYS FOR PLAINTIFF**

**BORDE LAW PLLC**
600 Stewart Street, Suite 400
Seattle, Washington 98101
(206) 531-2722

1

## <u>CERTIFICATE OF SERVICE</u>

2

     I hereby certify that on December 5, 2022, I electronically filed the foregoing with the

3

Clerk of the Court using the CM/ECF system which will send notification of such filing to the

4

CM/ECF participants.

5

6
                    BORDE LAW PLLC

7
        By:  <u>s/ Manish Borde</u>

8
             Manish Borde, WSBA #39503
             600 Stewart St., 400

9
             Seattle, WA 98101
             Telephone: (206) 531-2722

10
             E-mail: mborde@bordelaw.com

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

FIRST AMENDED COMPLAINT – CLASS ACTION
DEMAND FOR JURY TRIAL - 30