UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ALEXANDRIA NICHOLAS, ANGELA JONES, and MATTHEW CAREY, individually and on behalf of similarly situated individuals,<br><br>Plaintiffs,<br><br>v.<br><br>AMACON.COM, INC.,<br><br>Defendant. | Case No. C22-1616-RSM<br><br>ORDER GRANTING DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT |

## I. INTRODUCTION

This matter comes before the Court on Defendant Amazon.com, Inc.'s Motion to Dismiss Plaintiff's Second Amended Complaint ("SAC"). Dkt. #73. Plaintiffs oppose. Dkt. #75. The Court finds that it can rule on the Motion without oral argument and will GRANT Defendant's Motion for the reasons below.

## II. BACKGROUND

This case was removed from Cook County, Illinois to this Court on September 26, 2022. Dkt. #1. On December 5, 2022, Plaintiff Alexandria Nicholas filed her First Amended Complaint, alleging Defendant's "Subscribe & Save" ("S&S") program is "overly difficult and time-consuming" by using "dark patterns" to induce customers to subscribe but making the cancellation process excessively complicated through a "labyrinth of menus and icons" to frustrate the process. Dkt. #35 at 14. Plaintiff brought claims for violations of: (1) the Illinois

Automatic Contract Renewal Act; (2) the Washington Consumer Protection Act; (3) the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"); and common law claims of (4) fraud and (5) unjust enrichment. Dkt. #35 at 21, 19, 23, 25, and 26.

On June 12, 2024, this Court granted in part and denied in part Defendant's Motion to Dismiss Plaintiff Nicholas' FAC (Dkt. #61). Dkt. #69. The Court dismissed Plaintiff Nicholas' WCPA, ICFA, fraud, and unjust enrichment claims but did not dismiss her IACRA claim. *Id*.

Upon Court approval, Plaintiffs filed their Second Amended Complaint ("SAC") on August 12, 2024, adding Plaintiffs Angela Jones and Matthew Carey to this case. Dkt. #70. The SAC brings similar allegations against Defendant as the FAC and includes claims pursuant to (1) the Washington Consumer Protect Act ("WCPA"); (2) the Illinois Automatic Contract Renewal Act ("IACRA"); (3) California's Unfair Competition Law ("UCL"); and (4) California's False Advertising Law ("FAL"). *Id*. at 29-39. On September 9, 2024, Defendant filed the instant Motion to Dismiss the SAC. Dkt. #73.

### III. DISCUSSION

**A. Legal Standards**

**1. Rule 12(b)(6)**

In making a Rule 12(b)(6) assessment, the court accepts all facts alleged in the complaint as true and makes all inferences in the light most favorable to the non-moving party. *See Baker v. Riverside County Office of Educ.*, 584 F.3d 821, 824 (9th Cir. 2009) (internal citations omitted). To survive a 12(b)(6) challenge, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). However, the court is not required to accept as true a "legal conclusion couched as a factual allegation." *Id*. The complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that

is plausible on its face." *Id*. This requirement is met when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The complaint need not include detailed allegations, but it must have "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Absent facial plausibility, a plaintiff's claims must be dismissed. *Id*. at 570. Lastly, a complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Id*. at 555; *see* Fed. R. Civ. P. 8(a). Where a complaint is dismissed for failure to state a claim, "leave to amend should be granted unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986).

    2. Rule 9(b)

Under Fed. R. Civ. P. 9(b), claims sounding in fraud must be pled with particularity, including claims "grounded" or that "sound in fraud." *See Fid. Mortg. Corp. v. Seattle Times Co.*, 213 F.R.D. 573, 575 (W.D. Wash. 2003). To survive a Rule 9(b) challenge, a fraud claim must include "the who, what, when, where, and how" of the alleged misconduct. *Hernandez v. Johnson & Johnson*, No. 4:20-cv-05136-SMJ, 2021 WL 320312, *5 (E.D. Wash. Jan. 8. 2021); *see also Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1107 (9th Cir. 2003) (deeming a motion to dismiss under FRCP 9(b) "the functional equivalent" of a motion to dismiss under FRCP 12(b)(6) and thus treating dismissal under both rules "in the same manner").

    B. Analysis

        1. IACRA

Defendant first argues that this claim should be dismissed because "[t]he IACRA does not create an independent cause of action." Dkt. #73 at 11. In Plaintiff Nicholas' FAC,

Defendant argues, Plaintiff "allege[d] a violation of the ICFA [Illinois Consumer Fraud and Deceptive Business Practices Act]," but the SAC does not assert an ICFA claim anymore. *Id*.

IACRA provides that "[a] violation of this Act constitutes an unlawful practice under the Consumer Fraud and Deceptive Business Practices Act." 915 ILCS 601/15.

Defendant looks to *Turner v. GAC Star Quality, LLC*, 671 F. Supp. 3d 897 (N.D. Ill. 2023) and *Fandel v. Allen*, 398 Ill. App. 3d 177 (2010) for its argument. Dkt. #73 at 11. In *Turner*, the plaintiff brought a claim pursuant to Illinois' Repair Act. 671 F. Supp. 3d 897 (N.D. Ill. 2023). Like IACRA, the Automotive Repair Act provides that a violation "shall be deemed an unlawful act or practice under the Consumer Fraud and Deceptive Business Practices Act." 815 ILCS 306/85. This violation allows for "all remedies, penalties, and authority available to the Attorney General" under ICFA "for the enforcement of that Act shall be available for the enforcement of this Act." *Id*. This "imports the ICFA's expansive public enforcement scheme to punish such violations[,]" allowing the state attorney general to seek relief on behalf of the people. 815 ILCS 306/85 and 505 7/(a). "Because these remedies are more than adequate to accomplish the statute's regulatory objectives," the court held that the Automotive Repair Act does not contain an express or implied private right of action. 671 F. Supp. 3d at 903.

In *Fandel*, the plaintiff brought a claim pursuant to Illinois' Home Repair Act. 398 Ill. App. 3d at 180. The Illinois appellate court reiterated that "the Home Repair Act does not contain any language that explicitly or implicitly provides . . . a private cause of action." *Id*. at 184. Looking to section 35 of the act, the court reasoned that the Act specifically provides that "the Attorney General or the State's Attorney 'may bring an action in the name of the people'" and that they have "'[a]ll remedies, penalties, and authority granted'" by ICFA to enforce the Home Repair Act. *Id*. at 184-85 (quoting 815 ILCS 513/35). This act also states that violations "shall constitute a violation of" ICFA. 815 ILCS 513/35.

However, Plaintiffs note that in *Barrientos v. Fitness Member Servs., LLC*, the same district court as *Turner* allowed for an IACRA claim to proceed even while dismissing the plaintiff's ICFA claim. 749 F. Supp. 3d 944 (N.D. Ill. 2024). However, Defendant argues that neither party in *Barrientos* raised this issue, and "[t]he Barrientos court's silence on a question no one raised is not a holding on which the Court can rely [on] here." *See* Dkt. #77 at 5.

While the above acts giving rise to ICFA violations are similar, IACRA is slightly different because IACRA does not contain a similar provision limiting enforcement to an attorney general or state's attorney like the Automotive (815 ILCS 306/85) or Home Repair Acts (815 ILCS 513/35). Under ICFA, "[a]ny person who suffers actual damage as a result of a violation of this Act by any other person may bring an action against such person" to potentially receive an "award [of] actual economic damages or any other relief which the court deems proper[.]" 815 ILCS 505/10a. Plaintiffs contend that they "are thus granted license to bring IACRA claims *by* the ICFA, not merely *under* the ICFA, and their IACRA claim can proceed independently of an ICFA claim." Dkt. #75 at 20 (emphasis in original).

While Plaintiffs are correct that IACRA does not contain a limiting enforcement provision, Plaintiffs' argument fails in that IACRA simply does not include a private right of action but instead "constitutes an unlawful practice under" ICFA. 815 ILCS 601/15 and 505/2z. Plaintiffs' contention requires the Court to find an implied private right of action, which is unnecessary here. Illinois courts consider four factors to determine if an implied private right of action exists, "asking whether '(1) the plaintiff is a member of the class for whose benefit the statute was enacted; (2) the plaintiff's injury is one the statute was designed to prevent; (3) a private right of action is consistent with the underlying purpose of the statute; and (4) implying a private right of action is necessary to provide an adequate remedy for violations of the statute." *Turner*, 771 F. Supp. 3d at 903 (quoting *Metzger v. DaRosa*, 209 Ill.2d 30, 282 Ill. Dec. 138, 805

N.E..2d 1165, 1170 (2004)). Illinois courts imply this right "only in cases where the statue would be ineffective, as a practical matter, unless such action were implied." *Id*. at 904 (quoting *Metzger* at 1170). Using this reasoning, the Turner court found:

> The [Automotive] Repair Act designates repeat violations of its provisions as unlawful practices under the ICFA and imports the ICFA's expansive public-enforcement scheme to punish such violations. 815 ILCS 306/85; 815 ILCS 505/2z. Under the ICFA, the state attorney generally may subject Repair Act violators to injunctive relief, revocation of their business license, and civil penalties not to exceed $50,000 . . . . Because these remedies are more than adequate to accomplish the statute's regulatory objectives, no private right of action is needed.

*Id*. Looking at ICFA's provision allowing for plaintiffs to bring actions for actual damages, the *Fandel* court came to a similar conclusion:

> More importantly for our consideration, however, the Home Repair Act plainly and unambiguously provides that 'any violation of this Act shall constitute a violation of the Consumer Fraud and Deceptive Business Practices Act.' 815 ILCS 513/35 (West 2006). Section 10(a) of the Consumer Fraud Act [ICFA] provides defendant with the right to bring an action against plaintiff for any actual damages she suffered as a result of any violation of the Consumer Fraud Act. 815 ILCS 505/10(a) (West 2006). It is through section 10(a) of the Consumer Fraud Act that plaintiff can recover for any actual damages she suffered as a result of plaintiff's failure to comply with sections 20(a) and 30 of the Home Repair Act . . . . It is clear based on a reading of both the Home Repair Act and the Consumer Fraud Act that the legislature did not intend to provide homeowners with a private right of action under the Home Repair Act.

398 Ill. App. 3d 187-88. The Court finds no reason to disagree with the above Illinois courts and will dismiss this claim. Plaintiffs are free to amend the SAC to include the requisite claim(s).

### 2.  WCPA

Defendant once again argues that Plaintiffs' WCPA claim fails to meet Rule 9(b)'s heightened standard. Dkt. #73 at 9-10. Plaintiffs contend that they "have not pled a common law fraud claim [as done in the FAC], do not allege facts that constitute fraud in relation to their WCPA claim, and the gravamen of Plaintiffs' complaint is not fraud." Dkt. #75 at 17.

In the Court's prior Order on Defendant's Motion to Dismiss Plaintiff Nicholas' FAC, the Court dismissed the WCPA claim for failure to meet the heightened Rule 9(b) standard for a fraud-based claim because:

> Plaintiff's argument of "dark patterns" is premised on the notion that Amazon's S&S program uses "nefarious . . . process designs intended to confuse customers." Dkt. #61 at 8 (emphasis omitted). Nevertheless, Plaintiff fails to provide any details regarding what specific elements of the S&S cancellation process were deceptive, or when, where, or how she was misled by them.

Dkt. #69 at 6.

Here, Plaintiffs continue to argue that Defendant goes beyond using a system with the mere capacity to deceive but alleges that Defendant's S&S program "utilizes dark patterns – user interface design choices *intended* to confuse, deceive, and frustrate users[.]" Dkt. #70 ("SAC") at 1 (emphasis added), ¶ 2 ("which Amazon knows, and intentionally designs to be difficult to cancel"), ¶ 3 ("Defendant has intentionally designed its S&S Program using deceptive 'dark pattern' elements and omissions to ensure that customers overspend"), ¶ ("Dark patterns are online user interfaces that are intended to confuse users"), ¶ 19 ("Indeed, Amazon's own research and internal documents revel that Amazon has intentionally implemented dark patterns to keep its customers locked into subscriptions . . . including through its 'Project Iliad' program, which specifically sought to increase revenue by keeping customers singed up for unwanted subscriptions"), ¶ 38 ("That this complexity is intentional is obvious . . . Defendant purposely avoids building such convenience"), ¶ 83 ("Amazon engaged in unfair or deceptive acts or practices . . . to confuse or frustrate Plaintiffs and members of the Class in order to subvert their intentions to cancel"), ¶ 127 ("As a direct and proximate result of Defendant's intentional misrepresentations and concealment of facts"). Plaintiffs stating that Defendant's program "had the capacity to deceive" and was "misleading" or "deceptive" without using the word "fraud" does not remove the fact that Plaintiffs repeatedly invoke fraud. *Id*. at ¶¶ 5, 6, 84, and 86.

ORDER GRANTING DEFENDANT'S MOTION TO
DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT - 7

Because Plaintiffs are "not merely claiming that Defendant[] engaged in an act that had a *capacity to deceive*" but "here repeatedly accuse[] Defendant[] of having the *knowledge* and *intent* to deceive their customers, inducing those customers into buying and paying more for their goods than they otherwise would have[,]" Rule 9(b) applies to this claim. *Nemykina v. Old Navy, LLC*, 461 F. Supp. 3d 1054, 1058-59 (W.D. Wash. 2020).

Plaintiffs' reliance on *Vernon v. Qwest Commc'ns Int'l, Inc.*, 643 F. Supp. 2d 1256 (W.D. Wash. 2009) is easily distinguished here. *See* Dkt. #75 at 17. There, finding that the plaintiffs alleged that the defendant "intended to discourage customers from canceling . . . but not that [Defendant] intended to deceive customers[,]" this Court held that Rule 9(b) did not apply "in the absence of allegations of either an intent to deceive or an overarching fraudulent scheme." 643 F. Supp. 2d at 1264-65. "Notwithstanding the fact that Plaintiffs have not plead[ed] a common law fraud claim, Rule 9(b) applies where a claim is based on 'a unified course of fraudulent conduct,' even if the word 'fraud' is not used." *Id*. at 1264 (quoting *Vess v. Ciba-Geigy Corp.*, 317 F.3d 1097, 1103-05 (9th Cir. 2003). Here, Plaintiffs allege that Defendant not only intended to deceive customers into not canceling their S&S purchases, but that Defendant researched and implemented a "unified course of fraudulent conduct" through Defendant's "'Project Iliad' program – which specifically sought to increase revenue by keeping customers signed up for unwanted subscriptions." SAC at ¶ 38. Plaintiffs provide no reasoning for the Court to find otherwise this time around. Accordingly, Rule 9(b) applies to Plaintiffs' WCPA claim.

With Rule 9(b) applying, Defendant argues that "Plaintiffs do not allege any specific fact that they claim is unfair or deceptive about Amazon's S&S cancellation, let alone the who, what, where, when, and how of their WCPA claim." Dkt. #77 at 2.

In the Court's prior Order, the Court stated:

ORDER GRANTING DEFENDANT'S MOTION TO
DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT - 8

ORDER GRANTING DEFENDANT'S MOTION TO
DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT - 8

> Plaintiff fails to provide any details regarding what specific elements of the S&S cancellation process were deceptive, or when, where, or how she was misled by them. The only thing close to a cognizable theory of harm that Plaintiff puts forth is the allegation that Amazon's "cancel anytime" representation is somehow false. But again, she fails to provide screenshots or any other kind of information, for that matter, to substantiate this claim. Not only that, but it is undisputed that Plaintiff was successful in cancelling her initial dog food subscription once she realized that she did not want it, and that she then signed up for a second subscription via the same S&S process . . . . Her allegations focus on products she did not purchase and a platform – Amazon's mobile website – she did not utilize. Such vague allegations cannot put Amazon or the Court on notice of the basis of Plaintiff's fraud-based claims.

Dkt. #69 at 6-7.

Here, Plaintiffs' claim centers on their inability or frustrations to cancel subscriptions. SAC at ¶¶ 36-71. Plaintiff Nicholas alleges that she received an email for an upcoming dog food delivery with a "Manage your delivery" option, was "unable to cancel her subscription through the 'Manage your delivery' menus," was unable to cancel by navigation to the product page, "was *again* forced to navigate through the cancelation process's numerous and unnecessary menus and icons[,] believed she had successfully cancelled, but was only successful after receiving another delivery and charge and navigating the cancellation process again. *Id*. at ¶¶ 38-41. After initiating another S&S subscription, she "again attempted to cancel her subscription through Amazon's mobile website[,]" was again unsuccessful after being "led to believe that she had successfully cancelled . . . by completing each of the steps required[,]" and was successful "upon a second subsequent attempt . . . through Amazon's cancellation flow[.]" *Id*. at ¶¶ 42-43.

Plaintiff Jones alleges that she attempted to cancel her S&S subscription, initiated on Amazon's mobile app, for cat litter "by visiting the product page[,]" did not find a cancel button there, and "continues to receive deliveries" after "time wasted attempting to cancel her subscriptions." *Id*. at ¶¶ 49-57.

Plaintiff Carey alleges that he initiated four S&S subscriptions using a gift card as his payment method, "quickly received far more products than expected" and was "charged [via] a backup payment method[,]" and "had to search through multiple screens to locate the correct product and then repeat this process for each subscription" to cancel, taking "at least twenty minutes for the first item with additional time needed for each additional item." *Id*. at ¶¶ 59-68. He continued to receive all of the believed-cancelled subscriptions but was eventually successful. *Id*. at ¶¶ 69-70.

Again, Plaintiffs' SAC fails to provide anything beyond general allegations, including providing the same representative examples from the FAC. *See* FAC at ¶¶ 28-34 and SAC ¶¶ 33-34. Plaintiffs' examples of the "iOSAT brand Potassium Iodide tablets" and the "Waterdrop BS08 under-sink water filter system" are merely demonstrative (SAC at ¶¶ 33-35), as Plaintiffs allegedly subscribed to dog food (¶¶ 37-42), cat litter (¶ 48), and C4 Energy & Smart Energy Drinks (¶¶ 59-61), not either of the demonstrated products. The provided "nearly textbook illustration of the 'roach motel' dark pattern" using screenshots from Defendant's mobile app (*id*. at ¶ 38) is perhaps demonstrative of Plaintiff Jones, as she is the only plaintiff alleging using of the mobile app. *Id*. at ¶ 49. The product depicted was not purchased by any plaintiff. *Id*. at ¶ 38. Plaintiffs fail to allege what exactly in the S&S cancellation process is confusing or misleading. Again, Plaintiffs claims lack details of their own experiences and fail to satisfy FRCP Rule 9(b)'s heightened standard. *See In re Amazon Fee Litigation*, 705 F. Supp. 3d 1255, 1266-67 (W.D. Wash. 2023). Because the Court previously found this claim failed for the same reasons (*see* Dkt. #69 at 5-7), Plaintiffs' SAC does not remedy these deficiencies, and this claim in the SAC is largely identical to the FAC claim and suffers from similar pitfalls, the Court concludes that permitting further amendment here would be futile. *See Dumas v. Kipp*, 90 F.3d 386, 393 (9th Cir. 1996); *see also DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th

Cir. 1992) ("A district court does not err in denying leave to amend where the amendment would be futile") (internal citation omitted). Accordingly, the Court will dismiss this claim without leave to amend.

### 3. California's UCL and FAL

Defendant argues that Plaintiff Carey's claims (on behalf of the California subclass) fail because (1) they "sound in fraud" and fail to meet Rule 9(b)'s standards; (2) Plaintiff Carey lacks standing; (3) Plaintiff Carey "has not adequately pled" an FAL violation, which also defeats his UCL claim; and (4) Plaintiff Carey "has not adequately pled" an "ARL" (California's Automatic Renewal Law) violation under the UCL. Dkt. #73 at 15.

The Ninth Circuit has held that Rule 9(b)'s heightened standard applies when bringing fraud-based claims under the UCL or FAL. *See Magee v. Gen. Motors LLC*, No. EDCV 23-1715 JGB (SSCx), 2024 WL 1829692, at *7 ("It appears that the FAL violation is based on Defendant's alleged misrepresentation . . . and therefore 'sounds in fraud'" and fails under Rule 9(b)); *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) ("In fact, we have specifically ruled that Rule 9(b)'s heightened pleading standards apply to claims for violations of the CLRA and UCL."); *Vess*, 317 F.3d at 1103-04 ("In some cases, the plaintiff may allege a unified course of fraudulent conduct and rely entirely on that course of conduct as the basis of a claim. In that event, the claim is said to be 'grounded in fraud' or to 'sound in fraud,' and the pleading of that claim as a whole must satisfy . . . Rule 9(b)."). As discussed above, Plaintiffs' allegations do not satisfy Rule 9(b)'s heightened standards. Accordingly, the Court will dismiss these claims without leave to amend as well.

## IV.    CONCLUSION

Having reviewed the instant Motion, responsive briefings, and the remainder of the record, the Court hereby finds and ORDERS:

ORDER GRANTING DEFENDANT'S MOTION TO
DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT - 11

(1) Defendant Amazon's Motion to Dismiss Plaintiff's Second Amended Complaint, Dkt. #73, is GRANTED.

(2) Plaintiffs claims pursuant to the Washington Consumer Protection Act (Count I), California's Unfair Competition Law (Count III), and California's False Advertising Law (Count IV) are DISMISSED with prejudice without leave to amend.

(3) Plaintiffs' claim pursuant to the Illinois Automatic Contract Renewal Act (Count II) is DISMISSED without prejudice with leave to amend. Plaintiffs shall have thirty (30) days to file an amended complaint.

DATED this 6th day of October, 2025.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE